A11A2310. AIKEN DERMATOLOGY & SKIN CANCER CLINIC, P.A. v. DAVLONG SYSTEMS, INC.
(725 SE2d 835)

ADAMS, Judge.

Appellant/plaintiff Aiken Dermatology & Skin Cancer Clinic, P.A., has filed four essentially identical complaints against defendant/appellee DavLong Systems, Inc. seeking to recover for breach of contract and fraud. The first complaint (hereinafter referred to as Case One) was filed on March 14, 2002 and was dismissed without prejudice by Aiken Dermatology on March 18, 2003. Aiken Dermatology filed a substantially identical complaint (Case Two) against DavLong on March 25, 2003. On February 4, 2005, the trial court denied DavLong's motion for summary judgment on the breach of warranty claim, but granted DavLong summary judgment on the fraud claim. Although Aiken Dermatology had the right to file a direct appeal from that order pursuant to OCGA § 9-11-56 (h), it instead sought a certificate of immediate review, which the trial court issued, and then filed an application for interlocutory appeal in this Court, which this Court granted on March 3, 2005. Aiken Dermatology filed its notice of appeal on March 3, 2005 and DavLong filed a cross-appeal on March 8, 2005.

---

On July 6, 2005, the clerk of the lower court sent Aiken Dermatology's counsel a statement of costs for preparation of the appellate record via certified mail. However, costs were not paid, and DavLong filed a motion to dismiss the appeal based on failure to pay costs on September 12, 2006. On January 8, 2007, the clerk sent plaintiff's attorney another request for payment of the appeal costs. No other entries were made on the docket until March 1, 2010, when a docket entry indicates Case Two was dismissed under the five-year rule. OCGA § 9-11-41 (e).

On May 6, 2010, Aiken Dermatology filed a substantially similar complaint, which included a count based on fraud, against DavLong and its successor in interest, David H. Long (Case Three). However, at the time it filed Case Three, Aiken Dermatology had not paid the costs associated with Case Two,[1] and DavLong filed a motion to dismiss Case Three on or about June 9, 2010. On August 4, 2010, while Case Three was pending, Aiken Dermatology paid the costs associated with Case Two, and a few minutes later filed another renewal action (Case Four).

On August 31, 2010, DavLong filed a motion to dismiss Case Four, arguing that Case Four violated OCGA § 9-2-5, which prohibits the prosecution of simultaneous actions (see also OCGA § 9-2-44), and that Aiken Dermatology had impermissibly filed two renewal actions (Case Three and Case Four), outside the applicable statute of limitation. See OCGA § 9-2-61.

Approximately five months later, on January 3, 2011, the trial court apparently issued an order[2] dismissing Case Three based on plaintiff's failure to pay the costs associated with Case Two. On April 29, 2011, the trial court issued the order that is the subject of the present appeal, rejecting DavLong's claim that Aiken Dermatology had violated OCGA § 9-2-5 by prosecuting simultaneous actions, but nevertheless dismissing Case Four on the basis that Case Four was not a valid renewal action, reasoning that Aiken Dermatology's attempted filing of one renewal action outside the statute of limitation (Case Three) prevented the filing of another renewal action (Case Four) outside the statute of limitation. Further, the trial court found that its previous grant of summary judgment on Aiken Dermatology's fraud claim was res judicata as to that cause of action. Aiken Dermatology appeals, arguing that the trial court erred by finding that Case Three constituted an exercise of its one-time privilege of renewal under OCGA § 9-2-61 (a) and additionally erred

---

[1] That the costs were not paid is undisputed.

[2] The trial court noted that it was incorporating this order by reference into the order that is at issue in the present case, and took judicial notice of the dockets of all four cases.

by finding its claim for fraud was barred by the doctrine of res judicata.

1. We first consider whether the trial court properly dismissed Case Four because it fell, as the trial court held, outside the "penumbra of the renewal statute." Our analysis begins with the relevant statutory provisions. Pursuant to OCGA § 9-2-61 (a):

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; *provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.*

(Emphasis supplied.)

Further, OCGA § 9-11-41 (d) provides that "[i]f a plaintiff who has dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the plaintiff shall first pay the court costs of the action previously dismissed."

As to the relevant facts, the record shows that Case Three and Case Four were filed outside the applicable limitations period for contract claims, that both were filed within six months of the dismissal of Case Two, and that the costs associated with Case Two were not paid prior to the filing of Case Three but were paid minutes before the filing of Case Four. Further, there is no question that both Case Three and Case Four were attempts to file renewal actions of Case Two. Thus, while acknowledging that Case Three was not a valid, pending suit, the trial court reasoned the language of the statute which provides that a party is permitted to *exercise the privilege* of renewal only once means that the party is permitted to *attempt* to renew only once, and having failed in that attempt by not filing a valid cause of action when it filed Case Three, Aiken Dermatology was not permitted to file another renewal action.

Aiken Dermatology challenges this ruling, arguing that the trial court has impermissibly read the word "attempt" into the statute, which contains no such language. We are constrained to agree. As

cases from both this Court and our Supreme Court have made clear,

> OCGA § 9-11-41 (d) . . . requires court costs to be paid in the first suit before an action is recommenced. This is "a condition precedent to filing a second suit," so that "payment of costs in a previous suit is jurisdictional" with respect to a subsequent suit. *Little v. Walker*, 250 Ga. 854, 855 (301 SE2d 639) (1983). Without the prior payment of the first suit's costs, "the second suit is not a valid pending action." *Couch v. Wallace*, 249 Ga. 568, 569 (292 SE2d 405) (1982). It was not always so. *McLanahan v. Keith*, 239 Ga. 94 (236 SE2d 52) (1977).

*Jeff Davis Hosp. Auth. v. Altman*, 203 Ga. App. 168 (416 SE2d 763) (1992) (setting forth narrow exception not applicable here). See also *Tucker v. Mitchell*, 252 Ga. 545 (314 SE2d 896) (1984).

We fail to see how a party can be said to have *exercised* its one-time privilege of renewal by filing a complaint that is not valid, and thus we agree with Aiken Dermatology that Case Four was in fact the first time it exercised its one-time privilege of renewal under OCGA § 9-2-61 (a). See *Sosebee v. Steiner*, 128 Ga. App. 814 (198 SE2d 325) (1973) (recommenced suit not considered a valid pending suit when costs of previous action have not been paid); see also *Grier v. Wade Ford, Inc.*, 135 Ga. App. 821 (219 SE2d 43) (1975) (same).

However, the trial court also held that as a matter of fairness to DavLong, Aiken Dermatology should not have another opportunity to renew its suit. We too are bothered by the fairness of the situation here since DavLong has had the specter of a lawsuit hanging over it more or less continuously since 2003, and has been forced to respond to multiple filings, including those during the aborted appeal to this Court. However, we do not think the circumstances here are so "extreme . . . [and] . . . the delay was so long and so prejudicial that it would violate due process to allow the case to proceed." See *Robinson v. Boyd*, 288 Ga. 53, 57 (2) (701 SE2d 165) (2010). Further, it is important to remember that certain safeguards are built into the statutory scheme, as a party seeking to renew outside the applicable limitations period must do so within six months of the dismissed action it is seeking to recommence. Thus, the mere passage of time limits the number of renewal actions a party may "attempt" to file.

Accordingly, we hereby reverse the trial court's dismissal of Case Four on the basis that it was not a valid renewal under OCGA § 9-2-61 (a). Cf. *Worley v. Pierce*, 211 Ga. App. 863, 864 (1) (440 SE2d 749) (1994) (dismissing second renewal action); *Associated Writers Guild of America v. First Nat. Bank,* 195 Ga. App. 820, 821 (2) (395 SE2d 23) (1990) (same).

2. DavLong also argues that the trial court's order dismissing Case Four should be affirmed because, contrary to the trial court's holding, Case Three was a prior pending action that barred the filing of Case Four. See OCGA §§ 9-2-44 (a) and 9-2-5 (a). However, we find the trial court correctly rejected this argument.

"OCGA §§ 9-2-5 (a) and 9-2-44 (a) are closely related in effect and are to be considered and applied together." (Citations omitted.) *Huff v. Valentine*, 217 Ga. App. 310, 311 (1) (457 SE2d 249) (1995). Simply stated "[t]he general rule under [these provisions] is that when there are two lawsuits involving the same cause of action and the same parties that were filed at different times but that both remain pending in Georgia courts, the later-filed suit must be dismissed." *Bhindi Brothers v. Patel*, 275 Ga. App. 143, 145-146 (619 SE2d 814) (2005). But as we further noted in *Bhindi Brothers*, "there is an exception to the rule. If it appears from the face of the pleadings in the first-filed case that the court therein does not have jurisdiction to resolve the pending claims on the merits, then the plea of abatement will not lie and the later-filed suit may proceed forward." Id. at 146.

DavLong argues that the failure to pay costs was not a defect apparent from the face of the record and thus the trial court erred when it refused to dismiss Case Four based on the prior pending case rule. *Jones v. Rich's Inc.*, 81 Ga. App. 841, 849 (60 SE2d 402) (1950). But in our view, the trial court properly rejected this argument. In 1902, our Supreme Court, after reviewing the law of other jurisdictions on this issue, held that the exception to the rule prohibiting simultaneous prosecutions applies

> when — because of void process; *failure to comply with statutory conditions precedent to bringing suit*; instituting the action in a court having no jurisdiction of the subject-matter thereof; failure to give the suit a standing in court, by omitting to perfect legal service; or because of other like reasons, which the defendant is bound to know render it unnecessary to appear and plead, — the first suit is a wholly abortive effort, which the defendant is not legally called upon to resist at all, and therefore is really for the first time impleaded by the filing of another action which does render imperative his making a defense.

*Wilson v. Atlanta, K. & N. R. Co.*, 115 Ga. 171, 179-180 (41 SE 699) (1902).

Based on the foregoing, it appears firmly established that the payment of costs prior to filing Case Three was a "statutory condition precedent" that was not in the nature of an affirmative

defense "but a jurisdictional matter which may never be waived. OCGA § 9-11-12 (h) (3)." *Tucker v. Mitchell*, 252 Ga. at 545. Thus, we conclude that the trial court did not err in refusing to consider Case Three a prior pending suit such that Case Four should be dismissed.

3. Lastly, we address Aiken Dermatology's argument that the trial court erred by finding that its fraud claim was barred by the doctrine of res judicata.

"Under OCGA § 9-11-54 (b), a judgment as to one or more but fewer than all of the claims is not a final judgment and lacks res judicata effect unless the trial court expressly directs the entry of a final judgment. [Cit.]" *Stanley v. Hart*, 254 Ga. App. 258 (562 SE2d 186) (2002).

> But if a grant of partial summary judgment is not made final under OCGA § 9-11-54 (b), the party against whom summary judgment was granted has the option to either appeal or not appeal at that time. And if the party chooses to appeal, then the appellate decision on the summary judgment ruling is binding under OCGA § 9-11-60 (h).

*Roth v. Gulf Atlantic Media*, 244 Ga. App. 677, 679 (536 SE2d 577) (2000). Moreover, if a party attempts to appeal pursuant to OCGA § 9-11-56 (h) and suffers a procedural default resulting in the dismissal of the appeal, then res judicata also attaches; however, our appellate courts have stated that a different rule applies if a procedural default resulting in dismissal occurs in an appeal which has been initiated by the filing of an application for interlocutory review, or if a party voluntarily withdraws an appeal. Compare *Houston County v. Harrell*, 287 Ga. 162, 163 (695 SE2d 29) (2010) and *Mitchell v. Oliver*, 254 Ga. 112, 114 (1) (327 SE2d 216) (1985) with *Canoeside Properties v. Livsey*, 277 Ga. 425, 427 (1) (589 SE2d 116) (2003) and *Hardwick, Cook & Co. v. 3379 Peachtree, Ltd.*, 184 Ga. App. 822, 823 (1) (363 SE2d 31) (1987).

In this case, Aiken Dermatology timely filed its notice of appeal after we granted its application for interlocutory appeal,[3] but then failed to pay costs. As indicated by the docket, DavLong moved to dismiss the appeal on September 12, 2006, and Aiken Dermatology responded by filing a notice that it would not oppose the motion to dismiss on October 16, 2006. The next docket entry indicates a second request for payment of appeal costs was sent to Aiken

---

[3] We granted the application under the authority of *Spivey v. Hembree*, 268 Ga. App. 485, 486, n. 1 (602 SE2d 246) (2004), which provides that "[t]his Court will grant a timely application for interlocutory review if the order complained of is subject to direct appeal and the applicants have not otherwise filed a notice of appeal."

Dermatology's attorney on January 8, 2007, and the certified return receipt was filed on January 12, 2007. Nothing further appears on the docket until March 1, 2010, when the trial court's order dismissing the case for want of prosecution under the five-year rule was entered,[4] and neither the record nor the docket show that the appeal was ever involuntarily dismissed by the trial court because of Aiken Dermatology's failure to pay appeal costs. "Thus, the 'sanction of res judicata which attaches to a final judgment from which a procedurally defective appeal is taken,' suffered by the appealing party in *Mitchell* [and like cases], is not applicable. . . ." *Hardwick, Cook*, 184 Ga. App. at 823 (1).[5] Because res judicata does not bar the relitigation of the fraud claim lost on summary judgment in the prior suit, the trial court's order must be reversed.

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 9, 2012 — 

*Richard H. Middleton, Jr.*, for appellant.
*Friend, Hudak & Harris, Michael S. Reeves, Benjamin M. Byrd*, for appellee.

---

[4] We note that a dismissal for want of prosecution under the five-year rule occurs automatically and does not require an order by the trial judge. Further, it is not an adjudication on the merits for res judicata purposes. OCGA § 9-11-41 (e); *Goodwyn v. Carter*, 252 Ga. App. 114, 115 & 116 (555 SE2d 474) (2001).

[5] Although we need not decide this issue here, we note that this case is also distinguishable from those cases where the procedurally defective appeal from a grant of partial summary judgment was taken pursuant to OCGA § 9-11-56 (h) since this appeal was initiated via an application for interlocutory review pursuant to OCGA § 5-6-34 (b), which "does not have the effect of making the judgment appealed from res judicata of the issue." *Mitchell v. Oliver*, 254 Ga. at 114 (1). However, as noted in footnote 3, we granted this appeal on the basis that Aiken Dermatology had the right to file a direct appeal pursuant to OCGA § 9-11-56 (h), as is our practice, and thus it is arguable that to that extent this case would stand on the same footing as those cases where the "appellant machinery" has been put into motion via OCGA § 9-11-56 (h). However, because we decide this case on a different basis, it is not necessary for us to address the effect, if any, of that distinction here.